[Cite as *State ex rel. Cummins v. Lee*, 2014-Ohio-5296.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Cleveland Cummins, | : | |
| | : | |
| Relator, | : | |
| | : | |
| v. | : | No. 14AP-10 |
| | : | |
| Charles Kyun Lee Budget Host | | (REGULAR CALENDAR) |
| Town Center Motel and The | : | |
| Industrial Commission of Ohio, | : | |
| | : | |
| Respondents. | : | |
| | : | |

D E C I S I O N

Rendered on November 26, 2014

*Rendigs, Fry, Kiely & Dennis, L.L.P.,* and *Arthur E. Phelps, Jr.,* for relator.

*Michael DeWine*, Attorney General, and *Eric J. Tarbox*, for respondent The Industrial Commission of Ohio.

IN MANDAMUS

TYACK, J.

{¶ 1} Cleveland Cummins filed this action in mandamus, seeking a writ to compel the Industrial Commission of Ohio ("commission") to grant him temporary total disability ("TTD") compensation.

{¶ 2} In accord with Loc.R. 13(M) of the Tenth District Court of Appeals, the case was referred to a magistrate to conduct appropriate proceedings. The parties stipulated the pertinent evidence and filed briefs. The magistrate then issued a magistrate's decision, appended hereto, which contains detailed findings of fact and conclusions of

law.     The magistrate's decision includes a recommendation that we grant a writ compelling the commission to revisit the merits of Cummins' application for TTD compensation.

{¶ 3}   No party has filed objections to the magistrate's decision.   The decision is now before the court for review.

{¶ 4}   No error of law or fact is present on the face of the magistrate's decision. We therefore adopt the findings of fact and conclusions of law contained in the magistrate's decision.   As a result, we grant a writ of mandamus compelling the commission to vacate its order denying TTD compensation for Cleveland Cummins and compelling the commission to address the merits of Cummins' application for TTD compensation without relying on *State ex rel. Eckerly v. Indus. Comm.*, 105 Ohio St.3d 428, 2005-Ohio-2587.

*Writ granted.*

BROWN and LUPER SCHUSTER, JJ., concur.

# A P P E N D I X

### IN THE COURT OF APPEALS OF OHIO

### TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Cleveland Cummins, | : | |
| | : | |
| Relator, | : | |
| | : | |
| v. | : | No. 14AP-10 |
| | : | |
| Charles Kyun Lee Budget Host | | (REGULAR CALENDAR) |
| Town Center Motel and The | : | |
| Industrial Commission of Ohio, | | |
| | : | |
| Respondents. | : | |
| | : | |

### M A G I S T R A T E ' S   D E C I S I O N

### Rendered on July 31, 2014

*Rendigs, Fry, Kiely & Dennis, L.L.P.,* and *Arthur E. Phelps, Jr.*, for relator.

*Michael DeWine*, Attorney General, and *Eric J. Tarbox*, for respondent The Industrial Commission of Ohio.

### IN MANDAMUS

{¶ 5} Relator, Cleveland Cummins, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied his application for temporary total disability ("TTD") compensation, and ordering the commission to find that he is entitled to that award of compensation.

<u>Findings of Fact</u>:

{¶ 6}  1. Relator was employed at Budget Host Town Center Motel in Cincinnati, Ohio, when, on October 16, 2006, he was severely injured when he was shot in the back during a robbery attempt. As a result, relator's workers' compensation claim has been allowed for the following conditions:

> Open wound anterior abdomen; traumatic shock; colon injury-open; peritoneum injury-open; liver injury with wound cavity; right femoral neuropathy; prolonged post traumatic stress.

{¶ 7}  2. Relator received TTD compensation based on his allowed physical conditions from October 17, 2006 through January 25, 2009, when his treating physician agreed that his allowed physical conditions had reached maximum medical improvement ("MMI").

{¶ 8}  3. Relator was examined by Michael A. Murphy, Ph.D., who opined in his August 11, 2009 report that relator was suffering from post-traumatic stress disorder ("PTSD") as a direct result of the work-related injury, that he would need psychotherapy not less than two visits per month for a period of nine to ten months, and should consider a referral to rehabilitation in four to five months.

{¶ 9}  4. In a letter dated October 30, 2009, Jennifer J. Stoeckel, Ph.D., requested authorization for 12 visits on a bi-weekly basis over the course of 6 months.

{¶ 10} 5. On December 1, 2009, Dr. Stoeckel completed a C-84 indicating that she last saw relator on November 30, 2009 and certifying that he was temporarily and totally disabled from October 2009 through February 2010.

{¶ 11} 6. Relator received TTD compensation for his allowed psychological condition for the period October 29, 2009 through February 27, 2010. His allowed psychological condition was not found to have reached MMI. TTD compensation ceased when relator stopped filing C-84s.

{¶ 12} 7. A significant gap in treatment followed. During this period, there is no evidence relator received any treatment, looked for work or worked, or that he was capable of working.

{¶ 13} 8. On January 7, 2011, Dr. Stoeckel and Clinton B. Symons, a treating therapist, provided the Ohio Bureau of Workers' Compensation ("BWC") with a progress summary and treatment plan indicating that one of the goals was to "re-establish a therapeutic relationship between patient and therapist."

{¶ 14} 9. Dr. Stoeckel completed a C-9 dated January 10, 2011 requesting bi-weekly therapy sessions for the next six months. That request was approved by the employer's managed care organization ("MCO") on January 12, 2011.

{¶ 15} 10. On February 28, 2011, Dr. Stoeckel completed a C-84 indicating that she last saw relator on January 7, 2011 and certifying that he was temporarily and totally disabled from February 28, 2010 through an estimated return-to-work date of March 28, 2011.

{¶ 16} 11. The record contains a C-9 from Dr. Stoeckel requesting a psychological consult and testing. The employer's MCO neither approved nor rejected this claim and requested further information.

{¶ 17} 12. The record also includes the November 20, 2012 letter from Dr. Stoeckel asking why the employer's MCO was pending the requested C-9. In that letter, Dr. Stoeckel noted that relator was last seen in her office on January 7, 2011, that he had discontinued treatment prematurely, reportedly due to transportation problems, and that relator was requesting to reinitiate services through her office for ongoing related symptomatology. Dr. Stoeckel further noted that:

> We do not have any treatment notes beyond the 11-7-11 [sic] date to provide you since he has been absent from intervention since that time.

{¶ 18} 13. On April 11, 2013, Dr. Stoeckel completed a C-9 requesting bi-weekly counseling for four months. In an April 12, 2013 letter, Dr. Stoeckel provided additional information, stating:

> As you are aware, he has a claim allowance for Posttraumatic Stress Disorder (309.81) associated with a traumatic work injury sustained 10-16-06. He previously treated at this office, but had not been seen since 2-3-10 due to transportation issues. Mr. Cummins presented to the office 3-26-13 with ongoing complaints of impaired sleep, avoidant behavior, current nightmares of the traumatic injury,

anxiety, anhedonia, hyperarousal, flashbacks, a sense of impending doom, and general fearfulness. On the BAI administered at that time, Mr. Cummins achieved a score of 35, which places him at the severe range for an Anxiety Disorder. Since his last psychotherapy visit in 2010, he has had no mental health intervention. He has deteriorated and requires immediate care. He reports resolution of his transportation issues, appears to be invested in treatment, and denial of services would be detrimental to his psychological well being and status.

{¶ 19} 14. The employer's MCO neither approved nor rejected this claim and instead forwarded the matter to the BWC for determination.

{¶ 20} 15. Dr. Stoeckel completed a Medco-14 dated April 16, 2013 certifying that relator was temporarily and totally disabled from March 26 through June 26, 2013.

{¶ 21} 16. The record contains another C-9 from Dr. Stoeckel dated May 21, 2013 asking for a psychological consult.

{¶ 22} 17. On May 23, 2013, the employer's MCO dismissed Dr. Stoeckel's C-9 for the following reasons:

There is no supporting medical evidence for inactive claims or the medical evidence is dated more than 60 sixty days prior to date of reactivation request.

{¶ 23} 18. On June 17, 2013, Dr. Stoeckel completed another Medco-14 certifying that relator was unable to return to any work from June 26 through September 26, 2013.

{¶ 24} 19. On May 21, 2013, Dr. Stoeckel again, requested a consult.

{¶ 25} 20. Relator was evaluated by Roberto Madigral, Ph.D. In his July 10, 2013 report, Dr. Madigral opined that relator's PTSD had never resolved, that he needed the requested psychotherapy to address his PTSD symptoms, that the services requested were reasonably necessary and appropriate for the treatment of his allowed conditions, and that the cost of such treatment was medically reasonable.

{¶ 26} 21. In an order mailed July 25, 2013, the BWC informed relator that his claim was being reactivated, stating:

The following decision was made by the Bureau of Workers' Compensation (BWC).

BWC is reactivating this claim. We have determined a causal relationship exists between the original injury and current incident, which has prompted the medical treatment request. The request for treatment filed on 07-03-13 is allowed for Psycho Mod Consult (1 visit).

BWC will pay medical benefits in accordance with our rules and guidelines.

This decision is based on:

The examination done by Dr. Madrigal 07-03-13 [sic].

{¶ 27} 22. Thereafter, Dr. Stoeckel renewed her request for a psychological consultation which was approved by the BWC.

{¶ 28} 23. In an August 19, 2013 progress summary and treatment plan note, Dr. Stoeckel indicated that relator had made moderate progress in his recent psychotherapy sessions, but continued to have great difficulty. Dr. Stoeckel requested additional therapy which was approved.

{¶ 29} 24. Relator's motion seeking an award of TTD compensation beginning March 26, 2013 was heard before a district hearing officer ("DHO") on August 27, 2013. The DHO denied the request, stating:

[T]he injured worker did not return to the workforce after 02/27/2010 and based upon his testimony at the hearing he has no intent to re-enter the workforce. Therefore, the District Hearing Officer finds that the injured worker voluntarily abandoned the workforce.

{¶ 30} 25. Relator's appeal was heard before a staff hearing officer ("SHO") on October 7, 2013. The SHO vacated the prior DHO order, but still denied the request for TTD compensation, stating:

The Staff Hearing Officer notes that the Injured Worker's last day worked was 10/16/2006, the date of the injury. The Staff Hearing Officer finds that the Injured Worker did receive temporary total disability compensation for the physical allowed conditions from 10/17/2006 through 01/25/2009 and for a psychological condition for the period of 10/29/2009 through 02/27/2010. The Staff Hearing Officer finds that the Injured Worker did not return to the workforce after 02/27/2010. The Staff Hearing Officer finds

that the Injured Worker testified at the hearing that he was not capable from a physical standpoint and a mental standpoint to be employed at this time. The Staff Hearing Officer notes that the Injured Worker testified at the hearing that he wants to go back to work but currently feels he is not capable.

The Staff Hearing Officer finds that a key component regarding temporary total disability compensation is the Injured Worker's work-related injuries must remove the Injured Worker from employment. The Staff Hearing Officer finds that this requirement for temporary total disability compensation can't be satisfied if an Injured Worker is not employed at the time beginning of the alleged period of disability. **State ex rel. Eckerly v. Indus. Comm.** 2005, 105 Ohio St.3d 428. The Staff Hearing Officer finds that the Injured Worker has not provided any evidence that he has been employed since the date of injury of 10/16/2006 or tried to be employed. The Staff Hearing Officer finds that the Injured Worker's lack of action in trying to find employment shows that he has voluntarily abandoned the workforce, therefore precluding him from receiving temporary total disability compensation in this claim at this time.

Therefore the Staff Hearing Officer finds the Injured Worker is not entitled to receive temporary total disability compensation for the period of 03/26/2013 through 08/27/2013. This order is based upon the reasoning as stated above, the case of **Eckerly v. Indus. Comm. (2005)** and the Injured Worker's testimony.

(Emphasis sic.)

{¶ 31} 26. Relator's appeal was refused by order of the commission mailed October 30, 2013.

{¶ 32} 27. Thereafter, relator filed the instant mandamus action in this court.

Conclusions of Law:

{¶ 33} For the reasons that follow, it is this magistrate's decision that this court should grant relator's request for a writ of mandamus.

{¶ 34} The Supreme Court of Ohio has set forth three requirements which must be met in establishing a right to a writ of mandamus: (1) that relator has a clear legal right to the relief prayed for; (2) that respondent is under a clear legal duty to perform the act

requested; and (3) that relator has no plain and adequate remedy in the ordinary course of the law. *State ex rel. Berger v. McMonagle*, 6 Ohio St.3d 28 (1983).

{¶ 35} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986). On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56 (1987). Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165 (1981).

{¶ 36} TTD compensation awarded pursuant to R.C. 4123.56 has been defined as compensation for wages lost where a claimant's injury prevents a return to the former position of employment. Upon that predicate, TTD compensation shall be paid to a claimant until one of four things occurs: (1) claimant has returned to work; (2) claimant's treating physician has made a written statement that claimant is able to return to the former position of employment; (3) when work within the physical capabilities of claimant is made available by the employer or another employer; or (4) claimant has reached MMI. *See* R.C. 4123.56(A); *State ex rel. Ramirez v. Indus. Comm.*, 69 Ohio St.2d 630 (1982).

{¶ 37} In the present case, the commission cited *State ex rel. Eckerly v. Indus. Comm.*, 105 Ohio St.3d 428, 2005-Ohio-2587, as the sole rationale for determining that relator was not entitled to an award of TTD compensation. Relator asserts that the *Eckerly* decision does not support the commission's determination here and, for the reasons that follow, the magistrate agrees.

{¶ 38} It is undisputed that a voluntary departure from employment precludes receipt of TTD compensation. *State ex rel. Jones & Laughlin Steel Corp. v. Indus. Comm.*, 29 Ohio App.3d 145 (10th Dist.1985); *State ex rel. Ashcraft v. Indus. Comm.*, 34

Ohio St.3d 42 (1987). An involuntary departure, such as one that is injury induced, cannot bar TTD compensation. *State ex rel. Rockwell Internatl. v. Indus. Comm.*, 40 Ohio St.3d 44 (1988).

{¶ 39} Shawn E. Eckerly sustained a work-related injury when he broke one of his right metacarpals and a workers' compensation claim was allowed. Eckerly was able to return to his employment; however, three months later, he was fired for unexcused absenteeism. The commission determined that Eckerly's discharge constituted a voluntary abandonment of his former position of employment pursuant to *State ex rel. Louisiana-Pacific Corp. v. Indus. Comm.*, 72 Ohio St.3d 401 (1995), and denied him TTD compensation.

{¶ 40} Two years later, Eckerly's claim was allowed for the more significant conditions of reflex sympathetic dystrophy and chronic regional pain syndrome, right upper extremity. Eckerly sought a period of TTD compensation beginning in February 2003.

{¶ 41} The commission denied Eckerly's request for TTD compensation finding that there was no evidence that he was gainfully employed for any specific length of time between his termination in May 2001 and his request for TTD compensation beginning February 2003. Citing *State ex rel. McCoy v. Dedicated Transport, Inc.*, 97 Ohio St.3d 25, 2002-Ohio-5305, the commission stated that Eckerly was required to provide evidence that he had not abandoned the entire workforce and had returned to employment following his prior termination.

{¶ 42} Ultimately, the Ohio Supreme Court upheld the commission's decision finding Eckerly was not entitled to an award of TTD compensation because he was not able to show that the industrial injury removed him from his job. As the Supreme Court stated, this requirement could not be satisfied by Eckerly because he had no job at the time of the alleged disability.

{¶ 43} Relator asserts that his situation is distinguishable from *Eckerly* because, while Eckerly was able to return to employment following his work-related injury, relator was never released to return to work.

{¶ 44} Although not on point, the magistrate finds *State ex rel. MedAmerica Health Sys. Corp. v. Brammer,* 10th Dist. No. 11AP-904, 2012-Ohio-4416, to be

instructive. Sherry Brammer sustained a work-related injury and ultimately returned to work without restrictions; however, her symptoms increased and her physician of record again placed restrictions on her ability to work. Brammer's request for surgery was denied by her employer and, ultimately, Brammer was terminated for excessive absenteeism. Brammer would later testify that the majority of her absences were due to increased pain from the allowed conditions and the commission would ultimately conclude that her departure from the workforce was involuntary.

{¶ 45} Brammer obtained other employment which she could perform within her restrictions. However, due to a non-work related injury to her back, Brammer was forced to leave this employment.

{¶ 46} Because additional more substantial conditions had been allowed in her claim, Brammer sought authorization for surgery which her employer granted. Although her employer initially paid TTD compensation, her employer filed a motion to terminate that compensation and asked the commission to declare an overpayment. Her employer argued that Brammer was actually disabled due to a non-work related medical condition and was not working prior to surgery. The commission found Brammer's departure from her former position of employment was involuntary and that her return to other employment demonstrated that she had not abandoned the entire workforce and denied the employer's request.

{¶ 47} The employer filed a mandamus action and argued that, pursuant to *Eckerly*, Brammer was not entitled to TTD compensation because she was not working at the time of surgery and, as such, had no wages to apply. This court disagreed and discussed the applicability of *Eckerly*, stating:

> Relator points to the court's statement in *Eckerly* that the key aspect in all TTD cases is that the industrial injury must remove the claimant from his or her job, and this requirement cannot be satisfied if the claimant had no job at the time of the alleged disability. * * *
>
> However, *Eckerly* is distinguishable in several respects. In *Eckerly,* the worker was permitted to return to his former position of employment with no restrictions but then voluntarily abandoned his former position when he was fired for unexcused absenteeism. He subsequently voluntarily

abandoned the entire workforce. In the present case, claimant did not voluntarily leave her former position of employment with relator; rather, she was terminated for reasons related to the allowed conditions in her claim. * * * Thus, her departure from her employment with relator was involuntary, unlike the employee's voluntary abandonment in *Eckerly.*

In addition, Eckerly clearly does not stand for the proposition that TTD is precluded when a worker involuntarily abandons her former position of employment but then voluntarily departs a subsequent position of employment with another employer, which is the case here. To the contrary, as we recently found in *State ex rel. Cline v. Abke Trucking, Inc.,* 10th Dist. No. 10AP-888, 2012-Ohio-1914, ¶ 14-15, a voluntary abandonment of subsequent employment does not relate back and transform an involuntary departure from the original employer into a voluntary departure so as to render the employee ineligible for TTD compensation. *Id.* at ¶ 15.

*Id.* at ¶ 3-5.

{¶ 48} As noted in the findings of fact, relator received TTD compensation for his allowed physical conditions from October 17, 2006 through January 25, 2009, at which time his allowed physical conditions were found to have reached MMI. Thereafter, relator received TTD compensation for his allowed psychological condition from October 29, 2009 through February 27, 2010. At that time, relator was not released to return to any work, relator did not return to either his former position of employment or any other work, and, although his allowed psychological condition had not been found to have reached MMI, relator did not receive additional psychological treatment between November 30, 2009 and March 26, 2013.

{¶ 49} According to Dr. Stoeckel's records, relator had stopped treating for his allowed psychological conditions because of transportation issues and that, as of January 7, 2011, Dr. Stoeckel was attempting to re-establish a therapeutic relationship with him. Ultimately, the BWC reactivated relator's claim and he resumed treatment with Dr. Stoeckel who certified that he was temporarily and totally disabled from March 26, 2013 through June 26, 2013.

{¶ 50} The magistrate finds it significant that, at this time, relator is not seeking an award of TTD compensation during the time period in which he was not treating with Dr. Stoeckel. This requested period of TTD compensation also coincides with the order from the BWC dated July 25, 2013, wherein the BWC re-activated his workers' compensation claim.

{¶ 51} Unlike *Eckerly,* relator never returned to work after his work-related injury. Further, although his allowed physical conditions had reached MMI, his allowed psychological condition had not. Similarly to Brammer, relator's allowed psychological condition prevented him from returning to work. In his July 10, 2013 report, Dr. Madigral specifically stated:

**Summary**

Results from this evaluation indicate the presence of psychopathology. Mr. Cummins was treated briefly. Eight sessions are not enough to address a Post-Traumatic Stress Disorder. He went without treatment for two years and apparently remained pathological. I believe he is in need of at least, six months of treatment.

These results represent valid medical evidence with a reasonable degree of psychological certainty.

**Opinion**

[One] Claimant current symptoms are directly related causally to the prior active claim. He shows symptoms consistent with a Post-Traumatic Stress Disorder, which is his allowed condition. This condition was never resolved.

[Two] Medical services requested are reasonably related to the allowed condition. They are requesting psychotherapy twice a month for four months which is a little less than what he needs. This psychotherapy is requested to address his PTSD symptoms.

{¶ 52} There is no medical evidence that relator was ever able to return to his former position of employment or to any other employment. While it is true that he stopped treating with Dr. Stoeckel for a significant period of time, there is no evidence in the record that he was able to work during that time and, more specifically, relator is no

longer seeking TTD compensation during the time that he was not treating with Dr. Stoeckel. Because he was not able to return to work, the magistrate specifically finds that the *Eckerly* decision does not apply here.

{¶ 53} Because the commission's citation to *Eckerly* was the only rationale given for denying relator's TTD compensation and because the magistrate finds that the *Eckerly* decision does not apply to relator's situation, it is this magistrate's decision that this court should issue a writ of mandamus ordering the commission to vacate its order which denied relator TTD compensation and re-determine whether or not relator is entitled to an award of TTD compensation in a manner consistent with this magistrate's decision.

/S/ MAGISTRATE
STEPHANIE BISCA BROOKS

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).